DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Christiaan.Highsmith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JUSTIN JACKSON,<br><br>    Defendant. | NO. CR 19-291-001 JD<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing date: September 22, 2020<br>Time: 1:00 p.m.<br>Courtroom: 10, 19th Floor |

## I. INTRODUCTION

Defendant Justin Jackson is before the Court to be sentenced for illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o). Jackson faces an advisory Guidelines range of 51-63 months' imprisonment. Based on the serious nature and circumstances of his offense and Jackson's history and characteristics, including multiple prior felon-in-possession convictions and a pimping conviction, the government respectfully recommends a sentence of 51 months' imprisonment, three years of supervised release, forfeiture of the firearms and ammunition seized in this case, and a $100 special assessment. The Probation Office recommends a sentence of 48 months' imprisonment.

## II. BACKGROUND

On January 9, 2020, Jackson pleaded guilty to Count One of the Indictment—possession of a machinegun, in violation of 18 U.S.C. § 922(o). *See generally* Plea Agreement (Dkt. 29). The

1

Presentence Investigation Report (PSR) correctly provides for Base Offense Level 20, a three-level reduction for acceptance of responsibility, Total Offense Level 17, Criminal History Category VI, and a Guidelines range of 51-63 months in prison. PSR ¶¶ 20-29, 41. The government has no objections to the Presentence Investigation Report.

### III. DISCUSSION

**A. The Nature and Circumstances of Jackson's Offense Warrant a 51-Month Sentence**

Here, as a five-time convicted felon, Jackson possessed an especially deadline weapon—a handgun equipped with an auto sear switch that enabled the handgun to fire automatically; in other words, a machinegun. Moreover, Jackson equipped his machinegun with a 29-round extended magazine. This combination was extremely dangerous because it has the ability to fire a barrage of bullets with just a single pull of the trigger. And Jackson could readily and quickly fire additional rounds. He possessed within arm's reach a second extended magazine (15-round). Therefore, despite being a multi-convicted felon prohibited from possessing firearms, Jackson equipped himself with an extremely dangerous machinegun and sufficient ammunition to cause tremendous harm.



In addition to the weapon itself, the particular circumstances of Jackson's criminal conduct warrant a 51-month sentence. On October 27, 2018, at about 10:00 p.m., uniformed officers in a marked patrol police vehicle spotted a beige Buick sedan driving on 63rd Avenue in Oakland. PSR ¶ 8. Jackson was driving. His co-defendant, Paulisha Tanner, was in the front passenger's seat. The officers knew that earlier the same evening a brown/beige Buick sedan had been involved in a shooting in Oakland and

they suspected that Jackson's Buick, which matched the description, might be the Buick involved in the earlier shooting.¹  *Id.*  The officers followed Jackson's Buick down a residential side street and saw it collide with a parked vehicle and careen out of control into a second vehicle, pushing that second vehicle into a third vehicle.  *Id.*  Inside the Buick, Jackson knowingly possessed a machinegun—a Glock 22 equipped with a conversion device capable of firing automatically multiple shots with a single function of the trigger.  Plea Agreement, at 2.  Jackson knew that the firearm could shoot automatically and presumably because of that deadly functionality he loaded the machinegun with a 29-round extended magazine carrying at that time 25 rounds of ammunition.  *Id.*  Meanwhile, Jackson possessed a second extended magazine loaded with 15 rounds of ammunition on the floor between the driver's seat and the driver's side door.  *Id.*

Officers approached the crashed Buick on foot.  Jackson exited from the driver's seat and walked toward one of the officers.  PSR ¶ 9.  Given Jackson's status as a potential suspect in the earlier shooting, the officer drew his firearm and ordered Jackson to get on the ground and raise his hands.  Jackson raised his hands but continued walking toward the officer.  *Id.*  Given that Jackson's hands were raised above his head and empty, the officer de-escalated the situation by transitioning from his sidearm to his Taser.  *Id.*  Jackson took advantage of the officer's de-escalation.  Jackson walked in front of the officer and then ran.  *Id.*  The officer deployed his Taser but it failed to make contact with Jackson, who escaped.  *Id.*  The officer ran after Jackson but eventually lost him.  Officers later recovered the loaded machinegun from inside Tanner's purse inside the Buick and the 15-round magazine from inside the Buick on the floor between the driver's seat and the driver's side door.  *Id.* ¶ 11.

Jackson's conduct was especially egregious.  While driving down a small, residential side street with the police behind him, Jackson crashed his vehicle into two parked cars, causing a collision with a third vehicle.  This dangerous conduct is an aggravating factor not typically present in felon in possession cases.  In addition to this damage, Jackson escalated a dangerous situation by fleeing from the police.  Jackson's conduct took advantage of an officer who de-escalated a potentially violent confrontation with Jackson by transitioning from his firearm to his Taser.  Rather than comply with the

---

¹ Officers later determined that Jackson's Buick was not involved in the earlier shooting.

3

officer's command to stop, after the officer had holstered his firearm and taken out his Taser, Jackson ran. Jackson's flight from the police is a second aggravating factor unique to this case.

Jackson's eventual apprehension and arrest present a third aggravating factor. Jackson remained at large for more than three months—from October 27, 2018, to February 4, 2019. On February 4, 2019, officers located Jackson at an apartment in Vallejo, approached the apartment, announced themselves, and ordered Jackson outside. *Id.* ¶ 14. Rather than comply, Jackson refused officers' commands. *Id.* After approximately one hour and fifteen minutes of Jackson refusing to comply with officers' commands, authorities began firing beanbag rounds at the apartment windows. *Id.* ¶ 14. Only then did Jackson exit the apartment. His conduct created additional danger and a heightened risk of physical harm.

**B. Jackson's History and Characteristics Necessitate a 51-Month Sentence**

Jackson possessed the machinegun, 29-round magazine, and 15-round magazine while on probation and after sustaining five prior felony convictions and two misdemeanor convictions. PSR ¶¶ 32-38. These prior convictions were serious—many involved firearms and the potential for violence—and Jackson served significant prison time for those offenses. Jackson's previous sentences did not deter his additional criminal conduct. Moreover, Jackson's prior offenses frequently involved Jackson fleeing from authorities, presenting an additional danger to the community and to individuals involved in investigating Jackson.

Jackson's first conviction involved armed drug dealing. PSR ¶ 32. Officers observed Jackson and two other suspects inside a vehicle. They arrested Jackson outside the vehicle and recovered a shotgun and 45 individually-packed pieces of crack cocaine inside the vehicle. *Id.* Jackson's second felony conviction resulted from Jackson causing significant harm to a young boy. Jackson hit an eight-year-old boy who was riding a bicycle. Jackson's vehicle then dragged the boy approximately 10-to-15 feet down 55th Street before stopping. A witness then approached Jackson, but rather than remain at the scene Jackson sped away and fled. PSR ¶ 34. Jackson's third felony conviction involved conduct similar to the instant offense—illegal possession of a firearm. PSR ¶ 35. In that case, officers heard five-to-seven gunshots in rapid succession near their location. Officers arrived at the scene to investigate the gunshots and a vehicle almost collided with their patrol vehicle before speeding away.

Jackson was sitting in the passenger's seat of the fleeing vehicle. Officers gave chase and eventually saw Jackson attempting to climb a fence and hide from authorities. At that time, while on parole and after having two prior felony convictions, Jackson possessed a .45 caliber semi-automatic handgun. Eight months after being sentenced for his felon-in-possession conviction, Jackson was again arrested for possessing a firearm. PSR ¶ 36. In that case, officers conducted a pat down search of Jackson and Jackson resisted the officers. After officers felt the butt of a gun in Jackson's waistband, Jackson lurched forward and began running away. Eventually, officers caught Jackson and found Jackson's Glock 26 handgun on the ground in the path where Jackson had run. The firearm was loaded with one round in the chamber and 14 rounds in the attached magazine. At the time of his arrest, Jackson was on probation. Approximately two years after being sentenced, Jackson was arrested for pimping. PSR ¶ 37. As in this case, Jackson fled authorities to avoid arrest in connection with his pimping. He was sentenced to four years in prison.

In addition to his prior convictions and history of non-compliance with court-imposed supervision, Jackson has approximately eight additional arrests. Jackson's criminal history demonstrates that he commits crimes while under court supervision, he continues to possess firearms despite being a prohibited felon, and he flees from officers during justified stops. Jackson's conduct endangers the community. His record demonstrates that a significant sentence is necessary in this case.

Further, Jackson is 33 years old. His crime in this case was not a youthful indiscretion; this was the crime of a mature adult with a long history of illegally possessing firearms, committing additional felonies, and fleeing from the police. Jackson possessed a machinegun and extended magazine in this case after sustain two prior felon in possession convictions and three additional felony offenses. Despite being a mature adult, Jackson again fled from the police during the October 27, 2018 encounter and then he refused to comply with officers' orders three months later when officers arrived to execute his arrest warrant.

The PSR details Jackson's difficult upbringing and his brother's 2018 murder. These factors do not warrant a downward variance. The analysis might be different if this was Jackson's first offense or if Jackson was a younger man, but Jackson is 33-years old and has already been convicted of five prior felonies and two misdemeanors. He has two prior felon in possession felony convictions. While on

5

probation and after sustaining his prior convictions, Jackson, in this case, possessed a dangerous machinegun, crashed his car causing damage to three other vehicles, fled from the police, and then resisted arrest three months later. Jackson's difficult upbringing and family tragedies do not lessen the seriousness of his crime in this case, his extensive criminal history, the fact that he committed this crime as a mature adult, his danger to the community, and the need to deter Jackson and other similarly situated defendants from committing similar crimes. A 51-month sentence is necessary given Jackson's history and characteristics and the circumstances of this case.

### C. A 51-Month Sentence is Necessary to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

Jackson's instant firearms offense is serious. He has numerous prior criminal convictions for the very same conduct—illegally possessing firearms—yet in this case he possessed an even more dangerous weapon and did so while on probation. Prior sentences have not deterred Jackson. On March 8, 2016, Jackson was sentenced to four years prison for pimping. PSR ¶ 37. That sentence did not deter Jackson from committing additional crimes. Under these circumstances, a sentence of 51 months is necessary to deter Jackson, provide just punishment, promote respect for the law, and reflect the seriousness of Jackson's conduct.

### IV. CONCLUSION

Accordingly, the United States respectfully recommends that Justin Jackson be sentenced to 51-months in prison to be followed by three years of supervised release (with all the terms and conditions set forth in the PSR), no criminal fine (based upon a finding of inability to pay a criminal fine), forfeiture of the firearms and ammunition seized in this case, and a $100 special assessment.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

Dated: September 15, 2020

/s/
CHRISTIAAN HIGHSMITH
Assistant United States Attorney

6